# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**BRIAN EUGENE NAPIER**                                                                       **PLAINTIFF**

**v.**                                                         **CIVIL ACTION NO. 3:23-CV-P162-JHM**

**DAMON LASLEY** *et al.*                                                                 **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action. This matter is before the Court upon a motion for summary judgment filed by Defendants Damon Lasley and Eric Lewis (DN 50). Plaintiff Brian Eugene Napier filed a response and supplemental response (DNs 56 & 61); Defendants filed a reply (DN 62); and Plaintiff then filed a sur-reply (DN 64).[1]

### I.

Plaintiff initiated this action when he was incarcerated as a convicted prisoner at Hardin County Detention Center (HCDC). Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court allowed Eighth Amendment claims of excessive force and deliberate indifference to a serious medical need to proceed against HCDC Correctional Officers Lasley and Lewis in their individual capacities based upon an incident that occurred on June 15, 2022.

### II.

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party

---

[1] The Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies. They may be allowed, however, "[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated." *Id*. Thus, because Defendants submitted new evidence with their reply, the Court will consider Plaintiff's sur-reply.

satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id*. at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

Title 28 U.S.C. § 1746 permits a document signed and dated under penalty of perjury to be used instead of a sworn declaration or affidavit. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) ("[A] verified complaint . . . carries the same weight as would an affidavit for the purposes of summary judgment.") (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)). "Assertions made in a response signed and dated under penalty of perjury can therefore create genuine issues of material fact sufficient to defeat a motion for summary judgment." *Maxum Indem. Co. v. Broken Spoke Bar & Grill, LLC,* 420 F. Supp. 3d 617, 631-32 (W.D. Ky. Sept. 27, 2019). Additionally, when video evidence is available, the facts must be viewed "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

**III.**

In their motion for summary judgment, Defendants argue that they are entitled to judgment in their favor because the undisputed evidence shows that Plaintiff failed to exhaust his administrative remedies; that his claims fail on the merits; and that they are entitled to qualified immunity. Because the Court concludes below that Defendants are entitled to judgment based on the merits of Plaintiff's claims, the Court need not address either their exhaustion or qualified immunity argument.

**A. Excessive Force**

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The ban on cruel and unusual punishments prohibits the "'unnecessary and wanton infliction of pain'" on prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The Sixth Circuit recently analyzed the Eighth Amendment excessive-force standard as follows:

> What qualifies as the "unnecessary and wanton infliction of pain"? This requirement has objective and subjective components, both of which follow from the Eighth Amendment's text. *See Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Objectively, harm to a prisoner must rise to a sufficiently serious level because the Eighth Amendment prohibits only "cruel and unusual" deprivations, not just uncomfortable or "even harsh" ones. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see Phillips*, 14 F.4th at 534. Subjectively, harm to a prisoner must result from a prison official's sufficiently volitional actions because the Eighth Amendment bars only willful conduct that "inflict[s]" "punishment," not accidental conduct that causes injury. *See Phillips*, 14 F.4th at 535 (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)).
>
> . . . .
>
> As a subjective matter, the Court has held that prisoners who challenge a correctional officer's use of force must prove more than that the officer acted with 'deliberate indifference' to whether the force was necessary (the type of intent that prisoners must prove to challenge their conditions of confinement or medical care).

> *See [Hudson]* at 5-6; *cf. Wilson*, 501 U.S. at 302-03. The Court has instead described the "core judicial inquiry" in the use-of-force context as distinguishing between force used in a "good-faith effort to maintain or restore discipline" and force used "maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37, (2010) (per curiam) (quoting *Hudson*, 503 U.S. at 7). Only the latter kind of force—force exerted maliciously and sadistically to inflict pain—violates the Eighth Amendment. *See Hudson*, 503 U.S. at 5-7. So even if an officer uses force because of an "unreasonable" belief that it is necessary to restrain a prisoner, the officer does not violate the Eighth Amendment. *Whitley*, 475 U.S. at 324.

*Johnson v. Sootsman*, 79 F.4th 608, 615-16 (6th Cir. 2023). The court further explained:

> To decide whether a jury could find that an officer acted with this malicious intent, the Supreme Court has identified several factors to consider: What was the extent of the prisoner's injury? What was the nature of the threat that justified the use of force? Was the amount of force proportional to the threat? And did the officer take any actions designed to reduce the required amount of force? *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321. More generally, we have added that, while judges may review an encounter by slowing down, pausing, and replaying a video, officers have no such luxury. They must make quick decisions in the heat of the moment. So we defer to their decisions and avoid "unreasonable post hoc judicial second-guessing" of their conduct. *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008) (citation omitted); *see also Griffin*, 604 F.3d at 954.

*Id.* at 618.

In their motion for summary judgment, Defendants argue that the video footage of the relevant incident shows that every action they took was necessary to respond to Plaintiff's actions and to regain control of Plaintiff so as to ensure the safety of the officers responding to the incident and to restore institutional control. Plaintiff argues that Defendants should never have used force upon him to begin with because he was simply pleading for a shower to wash off pepper spray from the incident that had occurred earlier in the day[2] and that the resulting escalation of the use of force was therefore Defendants' fault.

---

[2] Neither party disputes that Plaintiff was involved in an altercation with two non-defendant HCDC officials early in the morning of the day of the incident at issue; that Plaintiff eventually pled guilty to two counts of assault due to his actions during that early morning altercation, *see* DN 50-2, Hardin Circuit Court Judgment and Sentence on Guilty Plea, PageID #:172; or that pepper spray was used on Plaintiff during this incident.

### 1. Pepper Spray

The undisputed evidence shows that Defendants went to Plaintiff's cell because he was banging on his cell door. (DN 61-1, Incident Report, PageID #:252). The video footage shows that once they arrived at Plaintiff's door, they engaged in a conversation with Plaintiff. (DN 50-3).[3] According to Plaintiff, he was trying to tell Defendants that he needed a shower to wash off pepper spray because his skin was still burning from the use of the spray during the incident earlier in the day. (DN 1, Verified Complaint, PageID #:4). According to the Incident Report, Defendant Lewis was giving Plaintiff commands to step away from the door but Plaintiff refused to comply. (DN 61-1, PageID #:252-53). Significantly, Plaintiff's evidence that the conversation in the video footage involves Plaintiff telling Defendants that he needed a shower does not contradict the evidence that Defendants were simultaneously commanding Plaintiff to step away from the door and that he refused to do so. Indeed, accepting both as true, neither party disputes that Defendant Lewis then opened the door and "deployed a 2 second burst of O.C. spray striking Plaintiff in the face." (*Id*. at PageID #:253).

The Sixth Circuit has held that use of pepper spray to force an inmate's compliance with direct orders is not excessive. *See Cretacci v. Call*, 988 F.3d 860, 869 (6th Cir. 2021) (holding that the defendant corrections officer's use of pepperballs on a pretrial detainee who failed to comply with an order to get on the ground was reasonable given that the defendant used a non-lethal weapon that caused only minor injuries that lasted a few days); *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (holding that defendant corrections officers did not violate the Eighth Amendment by using pepper spray on the plaintiff when he refused their repeated orders

---

[3] The video footage does not provide a view of Plaintiff's cell door but both parties seem to agree that Plaintiff was speaking with Defendants at his cell door when the video begins. Moreover, although it is not always clear to the Court which Defendant took which action in the course of the video, the parties also seem to agree on what actions were taken by Defendant Lewis and what actions were taken by Defendant Lasley.

to leave the shower); *Siggers v. Renner*, 37 F. App'x 138, 140-41 (6th Cir. 2002) (use of pepper spray to force the plaintiff to submit to a haircut was not excessive). In light of the undisputed evidence and this jurisprudence, the Court concludes that no reasonable jury could find that Defendant Lewis used excessive force when he deployed the pepper spray.

    **2. Taser**

Plaintiff states that after he was pepper-sprayed, he turned away from the door. (DN 61, Sworn Supplemental Response, PageID#:243). However, the unambiguous video footage shows that after Plaintiff was pepper-sprayed he threw his jumpsuit toward the door and then, instead of complying with Defendant Lewis's order, moved toward Defendants while they were standing in the door. (DN 50-3). As with pepper spray, the Sixth Circuit has held that prison officials may use tasers against recalcitrant prisoners to maintain discipline and restore order in the prison context. *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992). Thus, in light of this evidence and this jurisprudence, no reasonable jury could find that Defendant Lewis used excessive force when he deployed the taser. This is especially true since the undisputed evidence also shows that Defendant Lasley knew that Plaintiff had assaulted two non-defendant HCDC officers earlier in the day. (DN 50-5, Lasley Aff., ¶ 4). *See, e.g.*, *Curtis v. Christian Cnty.*, No. 5:20-CV-00055-TBR, 2022 U.S. Dist. LEXIS 92891 (W.D Ky. May 23, 2022) (holding that a reasonable jury could not conclude that a prison official's use of a taser to extract a prisoner from his cell was excessive force in light of the prisoner's demeanor at the time of entry to the cell and the prison official's knowledge that the prisoner had a history of altercations and prisoner's demeanor and actions at the time of entry to the cell).

### 3. Elbow and Baton Strikes

The Court next turns to Plaintiff's argument that Defendant Lewis's elbowing of him in the shoulder and Defendant Lasley's beating of Plaintiff's hand/wrist with a baton constitute excessive force. In the Incident Report, Defendant Lasley explains his actions as follows:

> The taser was not achieving muscle lockup and [Defendant] Lewis and [Plaintiff] began to wrestle as [Defendant] Lewis attempted to control [Plaintiff]. I called a CODE RED to get assistance as [Plaintiff] continued fighting [Defendant] Lewis and I tried to apply drive stuns with the taser, hoping to achieve muscle lockup, but failing to do so. [Plaintiff] then grabbed my taser and would not let go. To prevent him from disarming me and using the taser on a deputy as he was actively fighting us and because all other available levels of force were not effective, I used my [] baton to deliver strikes to his arm until he finally let go of the taser. [Plaintiff] then grabbed my taser and would not let go. To prevent him from disarming me and using the taser on a deputy as he was actively fighting us and because all other available levels of force were not effective, I used my [] baton to deliver strikes to his arm until he finally let go of the taser.

(DN 61-1, PageID #:252).

In in the same report, Defendant Lewis writes:

> I then went hands on and grappled [Plaintiff] and secured him to the floor. We continued to wrestle. [Plaintiff] was wet from toilet water and was difficult to control. [Plaintiff] then grabbed [Defendant] Lasley's taser in an attempt to disarm him. I had three elbow strikes to [Plaintiff]'s left shoulder area while [Defendant] Lasley was striking hand and forearm with his baton. [Plaintiff] let go of [Defendant] Lasley's taser and he was then secured in handcuffs. [Plaintiff] was then secured in a restraint chair.

(*Id.* at PageID #:253).

The video footage indicates that Defendants' presentation of the events is accurate because it shows Plaintiff holding tightly to an object in Defendant Lasley's right hand and not releasing it until the officers engage in the above-described actions. In his response, Plaintiff seems to argue that the fact that a bone in his hand/wrist was broken shows that the force Defendant Lasley used

7

with his baton was excessive.[4]  As set forth above, the Supreme Court has held that in determining whether the use of force is wanton and unnecessary, a court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response.  *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick,* 896 F.2d 184 (6th Cir. 1990).

In light of the video evidence and Defendants' corroborating evidence, the Court concludes that no reasonable juror could find that Defendant Lewis's elbowing of Plaintiff in the shoulder or Defendant Lasley's baton strikes were malicious or sadistic or that they took those actions for the very purpose of causing harm to Plaintiff.   This is true even if Defendant Lasley's baton strikes did cause Plaintiff's metacarpal fracture.  The video footage confirms that Defendants took these actions to prevent Plaintiff from gaining control of the taser and that they stopped beating Plaintiff's shoulder, arm, and hand as soon as Plaintiff released the taser.  In other words, Defendants' use of force was proportional to their reasonably perceived threat that Plaintiff could obtain control of Defendant Lasley's taser.  *See e.g.*, *Dedes v. Macomb Cnty.*, No. 2:18-CV-10082, 2020 U.S. Dist. LEXIS 55573, at *18-21 (E.D. Mich. Mar. 31, 2020) (holding that although the plaintiff's chipped tooth, black eye, and bodily bruising were evidence of physical struggle, they are not evidence that the struggle was motivated maliciously and sadistically for the purpose of causing harm and relying on video evidence to conclude that officers' knee strikes and continued

---

[4] The parties spend much effort disputing what caused Plaintiff's orthopedic injury. Defendants argue that Plaintiff broke his "4th metacarpal" when he beating on his cell door. Plaintiff argues that Defendant Lasley broke it with his baton. Neither party presents actual evidence regarding this issue, only their opinions. However, even if the Court accepts that it was Defendant Lasley's baton strikes which caused Plaintiff's broken bone, the Court nonetheless finds that the evidence shows that Defendant Lasley's baton strikes did not constitute excessive force for the reasons set forth herein.

tasering were a reasonable response to the plaintiff's active resistance especially since the video evidence showed that the officers ceased those actions as soon as the prisoner was handcuffed); *Watkins v. Blackmon*, No. 3:20-cv-00460-MR, 2022 U.S. Dist. LEXIS 180273, at *13 (W.D.N.C Oct. 2, 2022) (holding multiple baton strikes justified where the video evidence showed the plaintiff "did continue to struggle while he was on the ground, and that it required five or six officers to restrain him").

### 4. Neck Hold/Hands Over Mouth

Finally, the Court turns to Plaintiff's claim regarding the force Defendants used to keep Plaintiff from spitting on them. In the verified complaint, Plaintiff states:

> They then put me in a chair, I could not breath, all the mace was running down my throat, I told them I was choking and needed to spit over and over again, they would not help me so I spit straight up into the air, Lewis then grabbed my mouth and nose and pulled by neck back so far I could feel ligaments being stretched so far I thought they was going to tear and I thought I was going to die.

(DN 1, PageID #:4-5). And in his sworn supplemental response, Plaintiff states that Defendant Lewis "pulling on my neck was excessive force because I was no longer a threat . . . . He pulled my neck back so far I could not swallow my spit and was choking I told Lasley I need to spit because I was choking and he covered my mouth. I at no time spit in their direction I spit on myself just so I could breathe. . . . I believe this is . . . . strangulation." (DN 61, PageID #:242). In the Incident Report, Defendants explain that they held Plaintiff's neck and covered his mouth to prevent him from spitting on them and that eventually a spit hood was obtained to place over Plaintiff's head. (DN 61-1, PageID #:252-53).

The video evidence is problematic for Defendants as to this claim. The video does show Plaintiff spit while officers are trying to secure him in the restraint chair, but the video also shows that the way Plaintiff's head was being held and the placing of hands over Plaintiff's mouth caused

9

him visible distress and potentially trouble breathing. Moreover, Defendants have not put forth any evidence which shows that these were appropriate ways to restrain a prisoner to prevent him from spitting on them or that explains why they did not utilize the spit hood at their earliest opportunity instead of continuing to hold Plaintiff's head and cover his mouth in these concerning ways. Nonetheless, despite these issues, and after careful review of the video, the Court concludes that no reasonable juror could find that the video footage shows that Defendants violated the exceptionally high Eighth Amendment excessive-force standard by their actions – that is, that they acted maliciously or with the intent to cause harm to Plaintiff when they employed the above techniques to keep Plaintiff from spitting on them and the other officers who were attempting to secure Plaintiff in the restraint chair. As the Sixth Circuit has remarked, "[t]he issue is therefore not whether the use of force was absolutely necessary in hindsight, but 'whether the use of force would plausibly have been thought necessary, or instead evinced such a wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occurred.'" *Griffin*, 604 F.3d at 954 (quoting *Whitley*, 475 U.S. at 321).

### B. Deliberate Indifference to a Serious Medial Need

To establish a § 1983 claim premised on inadequate medical care in violation of the Eighth Amendment, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). Such a claim has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of

mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." *Taylor v. Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 837-47).

### 1. Denial of Request for Decontamination Shower

As set forth above, the evidence establishes that once Defendants arrived at Plaintiff's door, they engaged in a conversation with Plaintiff (DN 50-3); that Plaintiff tried to tell Defendants that he needed a shower to wash off OC spray because his skin was still burning from the use of the spray during the incident earlier in the day (DN 1, Verified Complaint, PageID #:4); that Defendant Lewis gave Plaintiff commands to step away from the door but Plaintiff failed to comply (DN 61-1, Incident Report, PageID #:252-53); and that it is at this point that their encounter escalated into the use-of-force incident described above.

As explained above, Plaintiff's evidence that the conversation in the video footage involves him telling Defendants that he needed a shower does not contradict the evidence that Defendants were simultaneously commanding Plaintiff to step away from the door and that he refused to do so. However, even assuming that Plaintiff's need to take a decontamination shower to wash off the pepper spray from the incident that had occurred approximately fifteen hours earlier constitutes a serious medical need, the video evidence described above shows that Defendants were impeded from taking Plaintiff to get a shower by Plaintiff's own conduct. Thus, Plaintiff has not created a triable issue of fact regarding whether either Defendant was deliberately indifferent to his stated need for a decontamination shower. *See, e.g*, *Messick v. Bryant*, No. 322-021, 2023 U.S. Dist. LEXIS 204803, *22-23 (S.D. Ga. Nov. 15, 2023) (holding that where the defendant police chief

11

called for an ambulance, and the video footage showed that plaintiff was obstructive and belligerent when EMS personnel attempted to help him, the evidence established that it was the plaintiff who prevented his access to immediate medical care and not deliberate indifference on the part of the police chief); *Hayes v. Precythe*, No. 21-04228-CV-C-SRB-P, 2022 U.S. Dist. LEXIS 224825 (W.D. Mo. Oct. 18, 2022) (finding no deliberate indifference where the defendant nurse terminated the plaintiff's evaluation after he became "aggressive"); *Provencio v. Vazquez*, No. 1:07-cv-00069-AWI-JLT, 2010 WL 2490937, at *9 (E.D. Cal. Mar. June 16, 2010) (holding the defendant officers' failure to flush the pepper spray from the plaintiff's face did not constitute deliberate indifference under the Eighth Amendment where the undisputed evidence showed that it was the defendant's actions, including attempting to spit on the defendants and fighting with the officers, which prevented the defendants from flushing pepper spray from his eyes and not for the purpose of causing harm).

### 2. Denial of Medical Care After Use-of-Force Incident

The Court now turns to Plaintiff's final claim which is that Defendants were deliberately indifferent to his serious medical need after the use-of-force incident concluded. The evidence shows that after the use-of-force incident Plaintiff had a broken bone (DN 61, Plaintiff's Sworn Supplemental Response, PageID #:239-40; DN 62-3; Radiology Report, PageID #:263). Plaintiff states that Defendants denied him the ability to get an x-ray and refused to take him to the hospital even though "the bone in the top of my hand . . . was pushing up under my skin both my hands were swollen 2 times their size . . . and I was begging to go to the hospital because my hand was broke." (*Id.*).

For purposes of this Memorandum Opinion and Order, the Court assumes that Plaintiff's broken bone constitutes a sufficiently serious medical need. Defendants, however, have presented

undisputed evidence which shows they were not deliberately indifferent to this need. The Progress Note submitted by Defendants shows that Plaintiff was seen by a medical professional after he was securely placed in the restraint chair and that the medical professional noted that Plaintiff was "alert to person/place" and that his breathing was "even/unlabored." (DN 62-1, PageID #:261). The Progress Note also shows that this medical professional noted swelling in both of Plaintiff's hands and his left ankle and that she ordered x-rays for him. *Id*. Defendants have also submitted a Refusal of Medical Treatment Form which shows that at 6:44 p.m., on June 15, 2022, Plaintiff refused to be x-rayed. It reads, "Pt stated 'if you open the door I will fight all the deputies.' Tried to get patient to have x-ray done, pt keeping say no." (DN 62-2, PageID #:261). The form is signed by a Southern Health Partners Medical Representative, C. Blackburn, a non-party, and four witnesses, also non-parties to this action. *Id*. Although Plaintiff states that C. Blackburn "is one of the nurses that I was begging for help and asked to please send me to the hospital along with [Defendant] Lasley" and that she "has worked for the detention center for at least 5 years and will do what they ask of her," *see* DN 64, Plaintiff's Sur-Reply, PageID #:268, he does not dispute that he refused to be x-rayed at that time or question the credibility of the four other witnesses who signed the Refusal of Medical Treatment Form.[5]

Thus, because the undisputed evidence shows that Plaintiff declined medical treatment after the use-of-force incident, the Court finds that Defendants are entitled to judgment in their favor on this claim. *See, e.g.*, *Palmer v. Wagner*, 3 F. App'x 329, 331 (6th Cir. 2001) (holding that the voluntary refusal to accept treatment precludes an Eighth Amendment claim for deliberate indifference to a serious medical need).

---

[5] Although Plaintiff argues that he continued to be denied medical care for his serious medical needs for two weeks after the use-of-force incident, Plaintiff presents no evidence of the details of this alleged denial or of Defendants' involvement in such.

## V.

For all these reasons, and being otherwise sufficiently advised, **IT IS ORDERED** that Defendants' motion for summary judgment (DN 50) is **GRANTED**.

Date: November 21, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
    Counsel of Record
4414.011

14